IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | INDICTMENT<br>Case No. 15 CR 060 JDP |
| PAMELA M. HASS, | 18 U.S.C. § 2<br>18 U.S.C. § 1343<br>18 U.S.C. § 1956(a)(1)<br>18 U.S.C. § 981(a)(1)(C)<br>18 U.S.C. § 982<br>28 U.S.C. § 2461(c) |
| Defendant. | |

---

THE GRAND JURY CHARGES:

## COUNTS 1-10

### Background

1. At all times material to this indictment:

    (a) Defendant PAMELA M. HASS ("HASS") held herself out as an investment advisor, working out of her home and office in Tomahawk, Wisconsin. HASS called her investment business "Influential Money."

    (b) Influential Wealth Group ("IWG") was the name HASS assigned to a group of investors who had invested money with her through Influential Money.

    (c) Your Personal Profit Success System, Inc. LLC (hereinafter "YPPSS") was the name HASS assigned to a particular investment that she was offering to investors through Influential Money.

(d)    Shifted Sands/Self Supporting Ministry (hereinafter "SSM") was the name HASS assigned to a particular investment that she was offering to investors through Influential Money.

(e)    HASS also held herself out to investors as the National Sales Director for Projaris Management Inc. ("Projaris"). Projaris purportedly offered and sold securities in a pooled investment which invested in precious metals, commodities, real estate, and an overseas trust fund.

(f)    HASS also worked as an advisor for people facing a home mortgage foreclosure. HASS called her business "Allodial Defense Trust." HASS offered her mortgage foreclosure advising services to her investors.

(g)    HASS opened and operated checking accounts at various banks in Tomahawk, Wisconsin, including: (i) account number XX XXX-8394 at River Valley Bank in the name of Pamela M. Hass DBA Influential Money; (ii) account XXXXX-6903 at River Valley Bank in the name of Shifted Sands; (iii) account number XXXXXX-8443 in the name of Wisconsin Fresh Christmas Trees at Tomahawk Community Bank; and (iv) account number XXXXXX-9938 in the name of Northwoods Investment Securities at Tomahawk Community Bank. HASS deposited and disbursed Influential Money investor funds from these checking accounts.

<u>Scheme To Defraud</u>

2.    During the period beginning in or about March 2007, and continuing to in or about October 2013, in the Western District of Wisconsin and elsewhere, the defendant,

2

PAMELA M. HASS,

knowingly, and with the intent to defraud, devised and participated in a scheme to defraud investors, and to obtain money and property by means of materially false and fraudulent pretenses, representations, omissions and promises.

3. It was part of the scheme to defraud that HASS made various misrepresentations to investors. For example, HASS told investors that if they invested money with her, she would invest it in a venture that involved internet advertising using pop up ads on websites. In most cases, HASS provided investors with a "private placement agreement" detailing the major terms of the investment. HASS typically signed and dated the agreement and provided a copy to the investor.

4. It was further part of the scheme to defraud that HASS falsely told investors they would obtain a return of anywhere from 5 to 10 to 15 to 20 times their original investment. HASS also falsely told investors the payout would take place in 30 to 300 days. HASS further told the investors that if the payout went beyond 300 days the investors would receive a bonus payment.

5. It was further part of the scheme to defraud that HASS falsely told investors if the investment failed she would personally guarantee the return of the original investment plus 7% interest.

6. It was further part of the scheme to defraud that HASS falsely told some of the investors she would match their investment dollar-for-dollar to help boost their return.

7.  It was further part of the scheme to defraud that HASS falsely told investors she had already invested her own funds in this investment and had made a lot of money for herself and now wanted to help other people make lots of money. In some cases, HASS showed investors a spreadsheet that purportedly detailed how much money she had made in the investment.

8.  It was further part of the scheme to defraud that HASS falsely told some of the investors that no taxes would be due on the payout because the taxes would already be paid from the investment account.

9.  It was further part of the scheme to defraud that HASS falsely told some of the investors that there were limited spots open in the investment pool and it would be closing shortly. HASS falsely told some investors they would have to invest immediately in order to secure a spot in the investment.

10. It was further part of the scheme to defraud that HASS falsely told some of the investors she would not charge a fee for managing the investment because she had already made so much money.

11. It was further part of the scheme to defraud that despite the representations she made to investors, there was no investment, and HASS did not invest any of the funds given to her for investment. Instead, HASS used the investment funds to pay her personal living expenses, including but not limited to:

    (a) taking and cashing checks in increments of $1,000 payable to HASS;

    (b) paying medical bills for her husband;

    (c) paying automobile repair bills and gas for her car;

4

    (d)    repaying a $15,000 business loan;

    (e)    paying gas and electric bills for her home;

    (f)    paying the home mortgage and property taxes;

    (g)    paying creditor bills that have gone to collections;

    (h)    paying phone and cable bills;

    (i)    paying restaurant bills;

    (j)    paying credit card bills;

    (k)    repaying loans received from family members;

    (l)    taking cash withdrawals from ATMs; and

    (m)    purchasing new carpeting for her home.

12.    It was further part of the scheme to defraud that HASS failed to inform her investors that she lied to them about there being a real investment. HASS failed to tell the investors that she misappropriated their funds to pay for her personal expenses and to provide returns to other investors. HASS failed to inform her investors that she did not make any money from any investment, and that her spreadsheet showing her purported profits was a fake.

13.    It was further part of the scheme to defraud that HASS sent periodic updates by email to her investors. In these emails, HASS falsely communicated to the investors that the payout was coming shortly and the investors should stay patient. HASS gave a variety of excuses for delays in the payout. HASS informed the investors that because of delays in the payout, they would receive a bonus to compensate them for the delays.

14.     It was further part of the scheme to defraud that when investors would contact HASS to inquire about the status of their investment and the reason why they had not been paid yet, HASS would tell them their investment was safe and they needed to stay patient.   HASS told them that because of the delay the investor would be receiving more money than originally promised.   HASS further told the investors to stay quiet about their investment and not talk to others about it.

15.     It was further part of the scheme to defraud that HASS instructed her investors to not comply with any SEC subpoenas they may receive requesting their investment records with HASS.   She told the investors the SEC subpoena was counterfeit and she supplied them with a sample letter response they should send back to the SEC.

16.     It was further part of the scheme to defraud that HASS received over $460,000 in investor funds which she failed to invest and instead used for her own purposes.

<u>Wires</u>

17.     On or about the dates listed below, in the Western District of Wisconsin and elsewhere, the defendant,

PAMELA M. HASS,

for the purpose of executing this scheme, knowingly caused to be transmitted, by means of wire communication in interstate commerce, the signals and sounds described below for each count, as follows:

| COUNT | DATE | NATURE OF WIRE COMMUNICATION |
|---|---|---|
| 1 | 1-10-11 | Email from HASS to M.M. regarding: delay in payment for D.M. is due to ailing mother-in-law. |
| 2 | 1-26-11 | Email from HASS to M.M. regarding: funds for D.M. have not yet been made available. |
| 3 | 2-25-11 | Email from HASS to M.M. regarding: sorry for the delay. It will take another 7-10 days. |
| 4 | 3-7-11 | Email from HASS to M.M. regarding: just on the phone with the trustees for the money transfer. |
| 5 | 3-10-11 | Email from HASS to M.M. regarding: they have stretched out the wait another 48 hours. |
| 6 | 1-30-12 | Bank wire transfer of $6,000 from M.B.'s bank account at U.S. Bank in Denver, CO to HASS's bank account at River Valley Bank in Wausau, WI. |
| 7 | 11-6-12 | Email from HASS to M.B. regarding: game plan for getting paid was delivered last night. |
| 8 | 11-8-12 | Email from HASS to M.B. regarding: speak to no one about the investment. |
| 9 | 11-23-12 | Email from HASS to M.B. regarding: deliveries could start today and run through tomorrow. |
| 10 | 12-6-12 | Email from HASS to M.B. regarding: do not comply with any subpoena from the SEC. |

(In violation of Title 18 U.S.C. § 1343 and 2).

## COUNTS 11-21

On or about the dates listed below, in the Western District of Wisconsin and elsewhere, the defendant,

PAMELA M. HASS

knowingly conducted and attempted to conduct the following financial transactions, which affected interstate commerce, which financial transactions involved the proceeds of a specified unlawful activity, to wit: wire fraud, with the intent to promote the carrying on of said specified unlawful activity, and that while conducting and attempting to conduct the financial transactions listed below, the defendant knew that

7

the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| COUNT | DATE | NATURE OF FINANCIAL TRANSACTION |
|---|---|---|
| 11 | 5-19-10 | Check #1001 issued by HASS to T.N. for $1,000 drawn on the Shifted Sands account at River Valley Bank. |
| 12 | 6-1-10 | Check #1002 issued by HASS to T.N. for $1,000 drawn on the Shifted Sands account at River Valley Bank. |
| 13 | 3-21-11 | Wire transfer by HASS for $32,100 from the Shifted Sands account at River Valley Bank to BNY Mellon Bank in Pittsburgh, PA for the benefit of C.M./D.M. |
| 14 | 4-1-11 | Wire transfer by HASS for $1,000 from the Influential Money account at River Valley Bank to Wells Fargo Bank in Gold Canyon, AZ for the benefit of S.H. |
| 15 | 5-6-11 | Wire transfer by HASS for $500 from the Influential Money account at River Valley Bank to Wells Fargo Bank in Gold Canyon, AZ for the benefit of S.H. |
| 16 | 6-6-11 | Wire transfer by HASS for $500 from the Influential Money account at River Valley Bank to Wells Fargo Bank in Gold Canyon, AZ for the benefit of S.H. |
| 17 | 6-9-11 | Wire transfer by HASS for $5,000 from the Influential Money account at River Valley Bank to Security Bank in New Auburn, WI for the benefit of C.F., Inc. |
| 18 | 6-15-11 | Transfer by HASS for $1,000 from the Influential Money account at River Valley Bank to the account of T.N. at River Valley Bank. |
| 19 | 2-1-12 | Transfer by HASS for $1,000 from the Shifted Sands account at River Valley Bank to the account of T.N. at River Valley Bank. |
| 20 | 3-5-12 | Transfer by HASS for $500 from the Shifted Sands account at River Valley Bank to the account of T.N. at River Valley Bank. |
| 21 | 3-14-12 | Transfer by HASS for $500 from the Shifted Sands account at River Valley Bank to the account of T.N. at River Valley Bank. |

(In violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 2).

## FORFEITURE ALLEGATION

1.    As a result of the offenses charged in Counts 1 through 10 of this indictment, the defendant,

PAMELA M. HASS,

shall forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982 and 28 U.S.C. § 2461(c), any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations, including but not limited to the following:

    (a)    <u>Money Judgment</u>- a sum of money equal to $460,831.27 in United States currency, representing the amount of proceeds obtained as a result of wire fraud.

2.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant -

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third person;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property, including but not limited to the following:

    (f)    Funds held by the defendant in checking or savings accounts;

    (g)    Funds held by the defendant in other financial accounts, trusts,

money market accounts, investments shares, or negotiable instruments;

   (h) Funds held by the defendant in pension, stock or bond accounts;

   (i) Real property, such as houses, apartment buildings, real property held for logging, real property held for investment, or condominiums owned by the defendant;

   (j) Other assets owned by the defendant, including home furnishings, paintings, guns, jewelry or business personal property; and

   (k) Conveyances, boats, ATVs, snowmobiles, RVs, or campers.

(In violation of Title 18, United States Code, Sections 981(a)(1)(C), 982 and Title 28, United States Code, Section 2461(c)).

A TRUE BILL,

_____
Presiding Juror

Indictment returned: May 13, 2015

_____
JOHN W. VAUDREUIL
United States Attorney